IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERORGE GARCIA, KYMBERLY BLEVINS, for herself and on behalf of her minor children, G. GARCIA and K. GARCIA, and MICHAEL ZASTRO, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| v. | ) ) | Judge: |
| CHICAGO POLICE OFFICER SERGIO MARTINEZ, STAR #19512; CHICAGO POLICE OFFICER GUY D. HABIAK, JR., STAR #14939; CHICAGO POLICE OFFICER JONATHAN E. DIBIASE, STAR #14050; CHICAGO POLICE OFFICER ANTHONY M. PALUMBO, STAR #7751; CHICAGO POLICE OFFICER ANGELO C. DICERA, STAR #14902; CHICAGO POLICE OFFICER ANDREW S. KATS, STAR #17577; CHICAGO POLICE OFFICER CHEN Q. ZHENG, STAR #18483; CHICAGO POLICE OFFICER SEAN P. LYNCH, STAR #18495; CHICAGO POLICE OFFICER CESAR SOTO, STAR #8166; And THE CITY OF CHICAGO, a Municipal Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Magistrate Judge: JURY DEMAND |
| Defendants. | ) | |

**COMPLAINT AT LAW**

NOW COME, the PLAINTIFFS, GERORGE GARCIA, KYMBERLY BLEVINS, for herself and on behalf of her minor children, G. GARCIA and K. GARCIA and MICHAEL ZASTRO, by and through their attorneys, LAW OFFICE OF JEFFREY J. NESLUND and MICHAEL D. ROBBINS & ASSOCIATES, and in complaining of the DEFENDANTS, CHICAGO POLICE OFFICERS SERGIO MARTINEZ, STAR #19512; GUY D. HABIAK, JR., STAR #14939; JONATHAN E. DIBIASE, STAR #14050; ANTHONY M. PALUMBO, STAR #7751; ANGELO C. DICERA, STAR #14902; ANDREW S. KATS, STAR #17577; CHEN Q.

1

ZHENG, STAR #18483; SEAN P. LYNCH, STAR #18495; CESAR SOTO, STAR #8166 and THE CITY OF CHICAGO, a Municipal Corporation, state as follows:

## INTRODUCTION

1. This is an action for civil damages brought under 42 U.S.C. Sec. 1983 for the deprivation of PLAINTIFFS' constitutional rights, and Illinois State law. This Court has jurisdiction pursuant to 28 U.S.C. Sec. 1331 and 1343.

2. Venue in this district is proper pursuant to 28 U.S.C. sec. 1391 (b), because the facts which give rise to the claims asserted herein occurred in the Northern District of Illinois.

3. PLAINTIFFS, GERORGE GARCIA, KYMBERLY BLEVINS for herself and on behalf of her minor children, G. GARCIA and K. GARCIA and MICHAEL ZASTRO are individuals who at all times relevant hereto, were present in and resided in the Northern District of Illinois.

4. DEFENDANTS, CHICAGO POLICE OFFICERS SERGIO MARTINEZ, STAR #19512; GUY D. HABIAK, JR., STAR #14939; JONATHAN E. DIBIASE, STAR #14050; ANTHONY M. PALUMBO, STAR #7751; ANGELO C. DICERA, STAR #14902; ANDREW S. KATS, STAR #17577; CHEN Q. ZHENG, STAR #18483; SEAN P. LYNCH, STAR #18495; CESAR SOTO, STAR #8166, were at all times material hereto, duly appointed Chicago Police Officers employed by the City of Chicago acting in the capacity of sworn law enforcement officials and acting under color of law

5. The DEFENDANT City of Chicago (hereinafter the "CITY") at all relevant times, was an Illinois Municipal Corporation, duly chartered and organized under the Laws of the State of Illinois, located entirely within this Judicial District and was, through its subsidiary agency the Chicago Police Department, the employer of the individual DEFENDANT

OFFICERS.

## FACTUAL SUMMARY

6. On and prior to March 13, 2021, the DEFENDANT OFFICERS were members of a newly formed "Community Safety Team" within the Chicago Police Department (hereinafter referred to as "CPD")

7. On or about March 13, 2021, DEFENDANT OFFICER MARTINEZ, under the supervision of DEFENDANT OFFICER HABIAK, JR., obtained a search warrant for the second-floor apartment of a residential building located at 1219 W. 32nd Place.

8. The Complaint and affidavit which were the basis for the issuance of the warrant contained fabricated, false and misleading information purportedly obtained from a "John Doe" informant.

9. The warrant authorized the DEFENDANT OFFICERS to search the 2nd floor apartment of the building located at 1219 W. 32nd Place Chicago, Illinois for "Cocaine a controlled substance, any evidence showing residency, any paraphernalia used in the weighing, cutting, or mixing of illegal drugs, any money, any records detailing illegal drug transactions, and any stored electronic information, and any other illegal contraband."

10. The DEFENDANT OFFICERS did not have judicial authority for a "no knock" warrant and were required to give the occupants a reasonable opportunity to open the door.

11. The location described in the warrant is a 4-unit residential building, with two (2) residential units on the first floor and two (2) residential units on the second floor.

12. On March 14, 2021, the date of the raid, PLAINTIFFS GEORGE GARCIA, his wife KYMBERLY BLEVINS, and their two minor children, G. GARCIA and K. GARCIA, ages 11 and 3, lived in the front unit of the second floor of the building.

13. On March 14, 2021 the first-floor apartment in the front of the building was rented to PLAINTIFF MICHAEL ZASTRO.

14. The warrant to search the Plaintiffs' home was supported by a complaint and an affidavit which was prepared by, or under the supervision of, DEFENDANT OFFICER HABIAK, JR.

15. Prior to the execution of the search warrant, there was no independent investigation to verify or corroborate the alleged information provided by the purported "John Doe" informant.

16. The two adult PLAINTIFFS, GEORGE GARCIA and KYMBERLY BLEVINS as well as their two children PLAINTIFFS G. GARCIA (11) and K. GARCIA (3) were home when the DEFENDANTS executed the warrant.

17. Despite the fact DEFENDANT OFFICERS did not obtain judicial authority for a "no knock" warrant, the DEFENDANT OFFICERS battered their way through a reinforced metal side door to the PLAINTIFFS' building without providing a reasonable opportunity for anyone to open the door and after PLAINTIFF GEORGE GARCIA told DEFENDANTS he would open the door.

18. Rather than afford the PLAINTIFFS an opportunity to simply open the side door, DEFENDANT DIBIASE and PALUMBO used a battering ram to smash in the side door, causing extensive damage to the structure of the door and door frame.

19. Upon entering the Plaintiffs' home, multiple DEFENDANT OFFICERS pointed guns at the PLAINTIFFS while screaming orders, terrorizing the minor children in particular, as they witnessed their parents being hand cuffed at gun point.

20. Both minor children were forcibly removed from the presence of their parents and placed

in a separate room along with the family dog, with the door closed.

21. Despite the fact that the warrant specifically confined the premises to be searched as the second-floor apartment of the building, the DEFENDANTS illegally expanded the scope of the search by searching the occupied first floor front residence of the building after illegally handcuffing and detaining Plaintiff MICHAEL ZASTRO, the resident of the first-floor apartment.

22. Additionally, a DEFENDANT OFFICER forced PLAINTIFF GEORGE GARCIA to surrender his keys to the separate garage behind his home as well as his private vehicle which was parked on the street.

23. The search by DEFENDANTS of the first-floor apartment, the separate garage and Mr. GARCIA's vehicle were entirely beyond the parameters of the warrant.

24. The DEFENDANT OFFICERS' search of PLAINTIFFS' home was unreasonable and excessive.

25. No illegal contraband of any kind was recovered as a result of the search of PLAINTIFFS' home, the downstairs tenant's residence, the PLAINTIFFS' garage or his vehicle.

26. The DEFENDANT OFFICERS became visibly frustrated after no illegal contraband was found on the property. The DEDFENDANT OFFICERS became more destructive and caused unnecessary property damage including cracking a minor child's tablet, breaking off the screen for the front door, and damaging the refrigerator and needless destruction of food, for example by placing batons into mayonnaise jars.

27. DEFENDANT OFFICERS also went through PLAINTIFF KYMBERLY BLEVINS'S underwear drawer removing individual pieces of lingerie and smirking while holding

them up in the presence of PLAINTIFFS KYMBERLY BLEVINS and her husband GEORGE GARCIA.

28. In an effort to conceal their misconduct as outlined above, the DEFENDANT OFFICERS fabricated official police reports which contained multiple false statements regarding the facts and circumstances of the execution of the warrant including that they knocked and announced with no response and that Plaintiffs refused to open the door.

## COUNT I
### (Unlawful Search)

29. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-28 above.

30. As more fully described above, DEFENDANT OFFICERS entered and searched PLAINTIFFS' residences, a separate garage and a parked vehicle without any legal justification, in violation of the Fourth Amendment to the United States Constitution.

31. As a direct and proximate result of the illegal search of PLAINTIFFS' homes, they have suffered damages including, but not limited, to property damage, property loss, embarrassment, humiliation, and emotional distress.

## COUNT II
### (Unlawful Seizure)

32. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-28 above.

33. As more fully described above, DEFENDANT OFFICERS detained PLAINTIFFS while they unlawfully searched their homes without any legal justification to do so, in violation of the Fourth Amendment to the United States' Constitution.

34. As a direct and proximate result of the illegal seizures of PLAINTIFFS' persons they have suffered damages, including, but not limited to, emotional pain and suffering.

## COUNT III
### (Supervisory Liability, Defendant HABIAK)

35. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-28 above.

36. As described above, DEFENDANT HABIAK was present at the location when the Defendant OFFICERS broke into PLAINTIFFS' home and conducted an unlawful search of the PLAINTIFFS as well as their apartments.

37. DEFENDANT HABIAK was the supervising Chicago Police officer on the scene, and as such, it was his responsibility to supervise the conduct of the other officers who illegally entered and searched the PLAINTIFFS and their residences.

38. Rather than properly supervising the DEFENDANT OFFICERS, OFFICER HABIAK condoned their unlawful behavior and approved of the illegal and excessive search of the PLAINTIFFS and their residences, and subsequently participated in, and approved the cover up of the illegal searches and unlawful conduct of the officers under his supervision, by creating false police reports and other documents for the purpose of concealing the misconduct of the DEFENDANT OFFICERS.

39. As a direct and proximate result of DEFENDANT HABIAK's failure to supervise the other DEFENDANT OFFICERS, PLAINTIFFS' homes were illegally entered with unlawful and unnecessary force and violence, the Plaintiffs were forced to the floor, terrorized, handcuffed at gunpoint, and detained while their home and their property was searched. DEFENDANTS gratuitously and vindictively damaged Plaintiffs' property and maliciously engaged in conduct involving sexual innuendo with the specific intent of humiliating and embarrassing PLAINTIFF KYMBERLY BLEVINS in the presence of her husband, their children and other DEFENDANT OFFICERS, all of whom were male

officers. As a result of the unlawful conduct herein described, the PLAINTIFFS suffered significant damages including, but not limited to, embarrassment, humiliation, fear, and emotional pain and suffering.

### COUNT IV
### (Unreasonable Procurement of a Search Warrant)

40. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-28 above.

41. Procurement of the search warrant by DEFENDANT MARTINEZ, under the supervision of DEFENDANT HABIAK, was unreasonable and unconstitutional for one or more of the following reasons:

    (a) In order to obtain the warrant, DEFENDANTS fabricated false and misleading information in the complaint and application for the warrant;

    (b) the DEFENDANTS failed to independently verify or corroborate alleged information provided by the informant prior to obtaining the warrant;

    (c) the DEFENDANTS failed to be truthful with the Assistant State's Attorney approving the warrant application and the judge issuing the warrant regarding all information provided by any alleged informant and corroboration of that information or lack thereof;

42. As a result of DEFENDANT MARTINEZ' unreasonable procurement of the search warrant, PLAINTIFFS sustained damages including but not limited to property damage, property loss, and emotional distress including fear and humiliation.

43. The procurement of the search warrant was in violation of PLAINTIFFS' Constitutional Rights and not authorized by law. The foregoing was unnecessary, unreasonable and excessive, and in violation of PLAINTIFFS' Fourth Amendment rights under the U.S. Constitution.

## COUNT V
### (Intentional Infliction of Emotional Distress)

44. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-28 above.

45. The misconduct of the DEFENDANT OFFICERS, including the violent entry into PLAINTIFFS' homes by numerous police officers brandishing guns was extreme and outrageous. The DEFENDANTS' actions were rooted in an abuse of power and authority that was undertaken with the knowledge of, and utter indifference to, the high probability – if not certainty - that the conduct would inflict terror and severe emotional distress to the PLAINTIFFS, especially the minors.

46. The misconduct described herein was undertaken with intent, malice, willfulness, wantonness, and reckless indifference to the rights of the PLAINTIFFS, such that the DEFENDANTS' actions shock the conscience.

47. At all times relevant hereto, the DEFENDANT OFFICERS were employees of the CITY of CHICAGO and acted within the scope of their employment in committing the misconduct described herein such that the City of Chicago is liable for their actions.

48. As a result of the above-described wrongful conduct, the PLAINTIFFS have suffered severe injuries including, but not limited to, substantial mental and emotional pain and suffering, embracement and humiliation.

## COUNT VI
### (*MONELL* CLAIM)

49. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-28 above.

50. At all relevant times, DEFENDANT CITY OF CHICAGO (herein after referred to as "CITY"), by and through its employees and agents of the Chicago Police Department, maintained official policies, customs and practices that facilitated and condoned the

DEFENDANTS' misconduct outlined above.

51. Before the illegal search of the PLAINTIFFS' home and destruction of their personal property on March 14, 2021, policy makers for the DEFENDANT CITY knew that the Chicago Police Department's policies, customs and practices for investigating, disciplining, supervising and controlling its teams of officers regularly engaged in well recognized patterns of illegal and unreasonable searches, failed to curb frequent abuses which resulted in patterns of violations of citizens' 4th Amendment rights and privacy.

52. In particular, policy makers for the DEFENDANT CITY knew that the Chicago Police Department's policies, customs and practices allowed teams of officers to regularly execute search warrants which were based upon uncorroborated and unreliable informant information to break into the homes and terrorize private citizens at gun point who committed no crimes.

53. Specifically, policy makers for the DEFENDANT CITY knew that the Chicago Police Department's policies, in obtaining search warrants to search citizens' homes for small quantities of drugs based on unverified information received from unreliable informants resulted in "wrong searches" and "negative searches" with disturbing frequency. That the repetitive pattern of police misconduct arising out of "John Doe" search warrants in particular, has caused untold suffering to numerous Chicago citizens, the vast majority of whom are people of color and who live in economically disadvantaged neighborhoods in Chicago.

54. That the repetitive pattern of police misconduct stemming from illegal searches of citizens' homes based on often false and unverified information that has caused immense and unjustified suffering, has led to numerous federal lawsuits seeking redress for

violations of the constitutional rights. As a direct consequence of the illegal policies and practices as described above, the DEFENDANT CITY has had to pay many millions of dollars to the innocent victims of police misconduct in the procurement and execution of illegal search warrants.

55. The actions of the DEFENDANT OFFICERS were done pursuant to one or more of the following *de facto* policies, practices and/or customs of the CITY that are so pervasive that they carry the force of law.

    A.    **Failure to Investigate or Discipline Officer Misconduct**

56. The CITY has certain *de facto* policies, practices and/or customs of concealing, ignoring, and otherwise tolerating egregious misconduct by Chicago Police Officers, including the abuse of police powers by officers who repeatedly violate the constitutional rights of citizens during the execution of search warrants.

57. Specifically, Chicago Police Officers routinely summarily break down the doors of private residences without announcing they are the police, and thereby denying the occupants a reasonable opportunity to admit the police, in violation of the judicial authority authorizing the search. It is the *de facto* policy, practice and/or custom of the Chicago Police Department to treat every search warrant as if it were a "no knock" warrant. Thus, it is a well-established practice by Chicago Police who do *not* have a "no knock" warrant to illegally and violently enter homes and to gratuitously destroy personal property without first providing residents a realistic opportunity to open the door without the police resorting to violently destroying property. This policy, practice and custom exceeds the judicial authority of the search warrant and places citizens' as well as officers' safety at risk.

58. At all relevant times, the Chicago Police Department maintained a policy or custom of

failing to investigate, discipline, supervise and control its officers and, in particular, independently corroborate alleged information obtained by informants in obtaining search warrants into private residences. By maintaining these policies or customs and practices, the DEFENDANT CITY caused its officers to believe that they could engage in misconduct and illegal searches with impunity because their actions would never be thoroughly scrutinized, or result in any discipline, sanction, or consequence of any kind.

59. DEFENDANT OFFICERS HABIAK, JR. and MARTINEZ have been the subject of numerous federal lawsuits regarding illegal search and seizures of citizens based on false or fabricated information obtained in search warrants. Specifically, federal lawsuits alleging illegal searches of citizens in their homes by DEFENDANT OFFICERS HABIAK, JR. and MARTINEZ include:

    (a)   *Chatman v. Habiak,* case number 18-cv-02880;

    (b)   *Love v. Martinez, case* number 13-cv-3174;

    (c)   *Pinex v. Martinez*, case number 11-cv-3896;

    (d)   *Walker v. Martinez*, case number 12-cv-1422; and

    (e)   *Mikolon v. Martinez*, case number 14-cv-1852.

60. This documented pattern of misconduct placed the DEFENDANT CITY on notice that their failed policies, practices and customs regarding fabricated or falsified search warrants resulted in a clear pattern of illegal misconduct by DEFENDANT OFFICER HABIAK, JR.'S and MARTINEZ. Despite the CITY's knowledge of the City's failed policies, practices and customs, the policymakers failed to take action to remedy these problems or discipline DEFENDANT OFFICER HABIAK, JR or DEFENDANT MARTINEZ.

### B. Chicago Police Failed to Maintain a Proper Early Warning System

61. The City of Chicago has failed to maintain a proper or valid early warning system to detect and intervene with corrective measures officers with multiple CRs and/or who exhibit patterns of potentially adverse performance, attitude and behavior.

62. The DEFENDANT CITY failed to maintain and/or utilize a valid early warning system which would have identified DEFENDANT OFFICER GUY D. HABIAK, JR, STAR #14939 and DEFENDANT OFFICER SERGIO MARTINEZ, STAR #19512 as officers with repeated offenses of a similar nature alleged against them. The complete absence of a valid early warning system is a complete failure by the DEFENDNAT CITY to impose proper discipline, re-training, supervising or any other meaningful intervention in an effort to curb repeated patterns of misconduct by DEFENDANT OFFICERS HABIAK, JR, or SERGIO MARTINEZ or other DEFENDANT OFFICERS.

63. The DEFENDANT CITY failed to identify officers with the highest numbers of CRs registered against them, despite knowing that such identification and proper retraining or discipline could prevent them from committing further acts that would cause and could cause injury to individuals such as PLAINTIFFS.

64. The actions of DEFENDANT OFFICERS were done pursuant to one or more of the following *de facto* policies, practices and/or customs of the CITY that are so pervasive that they carry the force of law:

   a) failing to make reasonable efforts to corroborate or properly investigate information provided by informants;

   b) fabricating or concealing material information in order to obtain warrants;

   c) exceeding judicial authority by executing every warrant as if it were a "no knock" warrant without providing residents a realistic opportunity to open the door and thereby needlessly destroying private property;

    d)      failing to record the execution of search warrants with body worn cameras in order to hold officers accountable and deter misconduct during the execution of search warrants;

    e)      failing to place official priority on avoiding unnecessary uses of force against young children or their adult relatives in the children's presence, or their pets. CPD's official use-of-force policy lacked any requirement or guidance for officers to avoid using unnecessary or excessive force against young children, their adult relatives in the children's presence or pets, when possible. CPD's search warrant policy and related policies failed to require officers seeking or executing residential search warrants to make reasonable efforts before obtaining and/or executing a warrant to determine, through investigation and surveillance, (a) whether children or pets reside in the residence; (b) to avoid entry and search at times when children are likely to be present; or (c) to de-escalate themselves or change tactics when they encounter young children or dogs in a residence.

    f)      failing to maintain and/or utilize a valid early warning system which would have identified DEFENDANT OFFICERS HABIAK, JR. and MARTINEZ as officers with repeated offenses alleged against them and led to the proper discipline, re-training, supervising or other intervention into their behavior.

As a result of the deficient policies and procedures outlined above, Chicago police officers routinely execute search warrants at the homes of innocent civilians, needlessly destroying private property, pointing weapons in the presence of young children and thereby causing traumatic stress and anxiety to the occupants, such as the PLAINTIFFS.

65. The aforementioned *de facto* practices, policies, and customs of DEFENDANTS, individually and collectively, have been maintained and/or implemented with utter indifference by DEFENDANTS, and have encouraged and/or motivated DEFENDANT OFFICERS to commit the wrongful act against PLAINTIFFS outlined above and, therefore, acted as the direct and proximate causes and moving force behind the injuries sustained by PLAINTTIFFS.

## REQUEST FOR RELIEF

66. PLAINTIFFS, GEORGE GARCIA, KYMBERLY BLEVINS, for herself and on behalf of her minor children, G. GARCIA and K. GARCIA and MICHAEL ZASTRO respectfully request that the Court:

    a. Enter a judgment in their favor and against all Defendants;

    b. Award compensatory damages against all Defendants;

    c. Award attorney's fees against all Defendants;

    d. Award punitive damages against all Defendants; and

    e. Grant any other relief this Court deems just and appropriate.

## JURY DEMAND

PLAINTIFFS, GEORGE GARCIA, KYMBERLY BLEVINS, for herself and on behalf of her minor children, G. GARCIA and K. GARCIA and MICHAEL ZASTRO, demand a trial by jury under the Federal Rule of Civil Procedure 38(b) on all issues so triable.

    Respectfully submitted,

    /s/ Jeffrey J. Neslund
    JEFFREY J. NESLUND
    One of the Attorneys for Plaintiffs

Jeffrey J. Neslund
Law Offices of Jeffrey J. Neslund
20 North Wacker Drive, Suite 3710
Chicago, Illinois 60606
(312) 223-1100

Michael D. Robbins
Michael D. Robbins & Associates
20 North Wacker Drive, Suite 3710
Chicago, Illinois 60606
(312) 899-8000