IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERORGE GARCIA, KYMBERLY BLEVINS, for herself and on behalf of her minor children, G. GARCIA and K. GARCIA, and MICHAEL ZASTRO, <br>         Plaintiffs, <br><br> v. <br><br> CHICAGO POLICE OFFICER SERGIO MARTINEZ, STAR #19512; CHICAGO POLICE OFFICER GUY D. HABIAK, JR., STAR #14939; CHICAGO POLICE OFFICER JONATHAN E. DIBIASE, STAR #14050; CHICAGO POLICE OFFICER ANTHONY M. PALUMBO, STAR #7751; CHICAGO POLICE OFFICER ANGELO C. DICERA, STAR #14902; CHICAGO POLICE OFFICER ANDREW S. KATS, STAR #17577; CHICAGO POLICE OFFICER CHEN Q. ZHENG, STAR #18483; CHICAGO POLICE OFFICER SEAN P. LYNCH, STAR #18495; CHICAGO POLICE OFFICER CESAR SOTO, STAR #8166; And THE CITY OF CHICAGO, a Municipal Corporation, <br>         Defendants. | Case No. 21CV02850 <br><br> Judge: Hon. Thomas M. Durkin <br><br> Magistrate Judge: <br> Hon. Jeffrey T. Gilbert |

## FIRST AMENDED COMPLAINT AT LAW

NOW COME, the PLAINTIFFS, GERORGE GARCIA, KYMBERLY BLEVINS, for herself and on behalf of her minor children, G. GARCIA and K. GARCIA and MICHAEL ZASTRO, by and through their attorneys, LAW OFFICE OF JEFFREY J. NESLUND and MICHAEL D. ROBBINS & ASSOCIATES, and in complaining of the DEFENDANTS, CHICAGO POLICE OFFICERS SERGIO MARTINEZ, STAR #19512; GUY D. HABIAK, JR., STAR #14939; JONATHAN E. DIBIASE, STAR #14050; ANTHONY M. PALUMBO, STAR #7751; ANGELO C. DICERA, STAR #14902; ANDREW S. KATS, STAR #17577; CHEN Q. ZHENG, STAR #18483; SEAN P. LYNCH, STAR #18495; CESAR SOTO, STAR #8166 and

1

THE CITY OF CHICAGO, a Municipal Corporation, state as follows:

## INTRODUCTION

1. This is an action for civil damages brought under 42 U.S.C. Sec. 1983 for the deprivation of PLAINTIFFS' constitutional rights, and Illinois State law. This Court has jurisdiction pursuant to 28 U.S.C. Sec. 1331 and 1343.

2. Venue in this district is proper pursuant to 28 U.S.C. sec. 1391 (b), because the facts which give rise to the claims asserted herein occurred in the Northern District of Illinois.

3. PLAINTIFFS, GEORGE GARCIA, KYMBERLY BLEVINS for herself and on behalf of her minor children, G. GARCIA and K. GARCIA and MICHAEL ZASTRO are individuals who at all times relevant hereto, were present in and resided in the Northern District of Illinois.

4. DEFENDANTS, CHICAGO POLICE OFFICERS SERGIO MARTINEZ, STAR #19512; GUY D. HABIAK, JR., STAR #14939; JONATHAN E. DIBIASE, STAR #14050; ANTHONY M. PALUMBO, STAR #7751; ANGELO C. DICERA, STAR #14902; ANDREW S. KATS, STAR #17577; CHEN Q. ZHENG, STAR #18483; SEAN P. LYNCH, STAR #18495; CESAR SOTO, STAR #8166, were at all times material hereto, duly appointed Chicago Police Officers employed by the City of Chicago acting in the capacity of sworn law enforcement officials and acting under color of law.

5. The DEFENDANT City of Chicago (hereinafter the "CITY") at all relevant times, was an Illinois Municipal Corporation, duly chartered and organized under the Laws of the State of Illinois, located entirely within this Judicial District and was, through its subsidiary agency the Chicago Police Department, the employer of the individual DEFENDANT OFFICERS.

## FACTUAL SUMMARY

6. On and prior to March 13, 2021, the DEFENDANT OFFICERS were members of a newly formed "Community Safety Team" within the Chicago Police Department (hereinafter referred to as "CPD")

7. The DEFENDANT OFFICERS were under the command of Deputy Chief Michael Barz, who was assigned the responsibility of the Community Safety Team (hereinafter referred to as "CST") by the police Superintendent.

8. Deputy Chief Barz rewarded the members of the CST who "crushed the numbers" and encouraged an illegal police strategy based on quotes for arrests and recovered contraband.

9. Deputy Chief Barz encouraged officers, including Defendant Sgt. Habiak and the Defendant Officers, to engage in quota-based policing strategies in violation of Illinois and federal law.

10. On or about March 13, 2021, DEFENDANT OFFICER MARTINEZ, under the supervision of DEFENDANT SGT. HABIAK, JR., obtained a search warrant for the second-floor apartment of a residential building located at 1219 W. 32nd Place Chicago, Illinois.

11. DEFENDANT OFFICER MARTINEZ authored the Complaint and affidavit for the search warrant under the supervision of DEFENDANT SGT. HABIAK, JR.

12. On information and belief, DEFENDANT OFFICER MARTINEZ fabricated certain details within the complaint and affidavit for the search warrant that were falsely attributed to a "J. Doe" informant in order to secure the warrant, including, but not limited to:

    (a.) J. Doe had previously purchased powder cocaine ("White") from Plaintiff George Garcia;

    (b.) J. Doe was in Plaintiff George Garcia's residence buying powder cocaine within 48 hours of applying for the warrant; and

(c) J. Doe had previously seen and purchased powder cocaine in the rear garage of Plaintiff George Garcia.

13. Without the fabricated and false statements by DEFENDANT OFFICER MARTINEZ attributed to a J. Doe informant, the DEFENDANT OFFICERS could not obtain judicial authority for the search warrant.

14. The warrant obtained by the DEFENDANT OFFICERS based on the false information fabricated by DEFENDANT MARTINEZ authorized the DEFENDANT OFFICERS to search the 2nd floor apartment of the building located at 1219 W. 32nd Place Chicago, Illinois for "Cocaine a controlled substance, any evidence showing residency, any paraphernalia used in the weighing, cutting, or mixing of illegal drugs, any money, any records detailing illegal drug transactions, and any stored electronic information, and any other illegal contraband."

15. The DEFENDANT OFFICERS did not have judicial authority for a "no knock" warrant and were required to announce their presence and then give the occupants a reasonable opportunity to open the door.

16. The location described in the warrant is a 4-unit residential building, with two (2) residential units on the first floor and two (2) residential units on the second floor.

17. On March 14, 2021, the date of the raid, PLAINTIFFS GEORGE GARCIA, his wife KYMBERLY BLEVINS, and their two minor children, G. GARCIA and K. GARCIA, ages 11 and 3, lived in the front unit of the second floor of the building.

18. On March 14, 2021 the first-floor apartment in the front of the building was rented to PLAINTIFF MICHAEL ZASTRO.

19. The two adult PLAINTIFFS, GEORGE GARCIA and KYMBERLY BLEVINS as well as their two children PLAINTIFFS G. GARCIA (11) and K. GARCIA (3) were home when the DEFENDANTS executed the warrant.

20. Despite the fact DEFENDANT OFFICERS did not obtain judicial authority for a "no knock" warrant, the DEFENDANT OFFICERS battered their way through a reinforced metal side door to the PLAINTIFFS' building without providing a reasonable opportunity for anyone to open the door and after PLAINTIFF GEORGE GARCIA told DEFENDANTS he would open the door.

21. Rather than afford the PLAINTIFFS an opportunity to simply open the side door, DEFENDANT DIBIASE and PALUMBO used a battering ram to smash in the side door, causing extensive damage to the structure of the door and door frame.

22. Upon entering the Plaintiffs' home, multiple DEFENDANT OFFICERS pointed guns at the PLAINTIFFS while screaming orders, terrorizing the minor children in particular, as they witnessed their parents being hand cuffed at gun point.

23. Both minor children were forcibly removed from the presence of their parents and placed in a separate room along with the family dog, with the door closed.

24. Despite the fact that the warrant specifically confined the premises to be searched to the second-floor apartment of the building, the DEFENDANTS illegally expanded the scope of the search by searching the occupied first floor front residence of the building after illegally handcuffing and detaining Plaintiff MICHAEL ZASTRO, the resident of the first-floor apartment.

25. Additionally, a DEFENDANT OFFICER forced PLAINTIFF GEORGE GARCIA to surrender his keys to the separate garage behind his home as well as his private vehicle which was parked on the street.

26. The search by DEFENDANTS of the first-floor apartment, the separate garage and Mr. GARCIA's vehicle were entirely beyond the parameters of the warrant.

27. The DEFENDANT OFFICERS' search of PLAINTIFFS' home was unreasonable

and excessive.

28. No illegal contraband of any kind was recovered as a result of the search of PLAINTIFFS' home, the downstairs tenant's residence, the PLAINTIFFS' garage or his vehicle.

29. The DEFENDANT OFFICERS became visibly frustrated after no illegal contraband was found on the property. The DEDFENDANT OFFICERS became more destructive and caused unnecessary property damage including cracking a minor child's tablet, breaking off the screen for the front door, and damaging the refrigerator and needless destruction of food, for example by placing batons into mayonnaise jars.

30. DEFENDANT OFFICERS also went through PLAINTIFF KYMBERLY BLEVINS'S underwear drawer removing individual pieces of lingerie and smirking while holding them up in the presence of PLAINTIFFS KYMBERLY BLEVINS and her husband GEORGE GARCIA.

31. In an effort to conceal their misconduct as outlined above, the DEFENDANT OFFICERS fabricated official police reports which contained multiple false statements regarding the facts and circumstances of the procurement and execution of the warrant, including that they knocked and announced with no response and that Plaintiffs refused to open the door.

## COUNT I
**(Unlawful Search)**

32. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-31 above.

33. As more fully described above, DEFENDANT OFFICERS entered and searched PLAINTIFFS' residences, a separate garage and a parked vehicle without any legal justification, in violation of the Fourth Amendment to the United States Constitution.

34. As a direct and proximate result of the illegal search of PLAINTIFFS' homes, they

have suffered damages including, but not limited, to property damage, property loss, embarrassment, humiliation, and emotional distress.

## COUNT II
**(Unlawful Seizure)**

35. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-31 above.

36. As more fully described above, DEFENDANT OFFICERS detained PLAINTIFFS while they unlawfully searched their homes without any legal justification to do so, in violation of the Fourth Amendment to the United States' Constitution.

37. As a direct and proximate result of the illegal seizures of PLAINTIFFS' persons they have suffered damages, including, but not limited to, emotional pain and suffering.

## COUNT III
**(Supervisory Liability, Defendant HABIAK)**

38. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-31 above.

39. As described above, DEFENDANT SGT. HABIAK was present at the location when the Defendant OFFICERS broke into PLAINTIFFS' home and conducted an unlawful search of the PLAINTIFFS as well as their apartments.

40. DEFENDANT SGT. HABIAK was the supervising Chicago Police officer on the scene, and as such, it was his responsibility to supervise the conduct of the other officers who illegally entered and searched the PLAINTIFFS and their residences.

41. Rather than properly supervising the DEFENDANT OFFICERS, SGT. HABIAK condoned their unlawful behavior and approved of the illegal and excessive search of the PLAINTIFFS and their residences, and subsequently participated in, and approved the cover up of

the illegal searches and unlawful conduct of the officers under his supervision, by creating false police reports and other documents for the purpose of concealing the misconduct of the DEFENDANT OFFICERS.

42. As a direct and proximate result of DEFENDANT SGT. HABIAK's failure to supervise the other DEFENDANT OFFICERS, PLAINTIFFS' homes were illegally entered with unlawful and unnecessary force and violence, the Plaintiffs were forced to the floor, terrorized, handcuffed at gunpoint, and detained while their home and their property was searched. DEFENDANTS gratuitously and vindictively damaged Plaintiffs' property and maliciously engaged in conduct involving sexual innuendo with the specific intent of humiliating and embarrassing PLAINTIFF KYMBERLY BLEVINS in the presence of her husband, their children and other DEFENDANT OFFICERS, all of whom were male officers. As a result of the unlawful conduct herein described, the PLAINTIFFS suffered significant damages including, but not limited to, embarrassment, humiliation, fear, and emotional pain and suffering.

## **COUNT IV**
**(Unreasonable Procurement of a Search Warrant)**

43. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-31 above.

44. Procurement of the search warrant by DEFENDANT MARTINEZ, under the supervision of DEFENDANT SGT. HABIAK, was unreasonable and unconstitutional for one or more of the following reasons:

    (a) In order to obtain the warrant, DEFENDANTS fabricated false and misleading information in the complaint and application for the warrant;

    (b) the DEFENDANTS fabricated criminal conduct allegedly observed and provided by the informant in order to obtain the warrant;

    (c) the DEFENDANTS failed to be truthful with the Assistant State's

Attorney approving the warrant application and the judge issuing the warrant regarding the fabricated information that provided the basis for the warrant.

45. As a result of DEFENDANT MARTINEZ' unreasonable procurement of the search warrant by fabricating information attributed to the J. Doe informant, PLAINTIFFS sustained damages including but not limited to property damage, property loss, and emotional distress including fear and humiliation.

46. The procurement of the search warrant was in violation of PLAINTIFFS' Constitutional Rights and not authorized by law. The foregoing was unnecessary, unreasonable, and excessive, and in violation of PLAINTIFFS' Fourth Amendment rights under the U.S. Constitution.

## COUNT V
**(Intentional Infliction of Emotional Distress)**

47. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-31 above.

48. The misconduct of the DEFENDANT OFFICERS, including the violent entry into PLAINTIFFS' homes by numerous police officers brandishing guns was extreme and outrageous. The DEFENDANTS' actions were rooted in an abuse of power and authority that was undertaken with the knowledge of, and utter indifference to, the high probability – if not certainty - that the conduct would inflict terror and severe emotional distress to the PLAINTIFFS, especially the minors.

49. The misconduct described herein was undertaken with intent, malice, willfulness, wantonness, and reckless indifference to the rights of the PLAINTIFFS, such that the DEFENDANTS' actions shock the conscience.

50. At all times relevant hereto, the DEFENDANT OFFICERS were employees of

9

the CITY of CHICAGO and acted within the scope of their employment in committing the misconduct described herein such that the City of Chicago is liable for their actions.

51. As a result of the above-described wrongful conduct, the PLAINTIFFS have suffered severe injuries including, but not limited to, substantial mental and emotional pain and suffering, embracement, and humiliation.

## COUNT VI
### (*MONELL* CLAIM)

52. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-31 above.

53. At all relevant times, DEFENDANT CITY OF CHICAGO (herein after referred to as the "CITY"), by and through its employees and agents of the Chicago Police Department, maintained official policies, customs and practices that facilitated and condoned the DEFENDANTS' misconduct outlined above.

54. Before the illegal search of the PLAINTIFFS' home and destruction of their personal property on March 14, 2021, policy makers for the DEFENDANT CITY knew that the Chicago Police Department's policies, customs and practices for investigating, disciplining, supervising and controlling its teams of officers regularly engaged in well recognized patterns of illegal and unreasonable searches, but failed to curb the systemic abuses which resulted in frequent violations of citizens' 4th Amendment rights and privacy.

55. In particular, policy makers for the DEFENDANT CITY knew that the Chicago Police Department's policies, customs and practices allowed select teams of officers to regularly execute search warrants that were often based upon fabricated, uncorroborated and unreliable informant information and to improperly execute said warrants and thereby break into the homes of private citizens who had committed no crimes.

56. Specifically, policy makers for the DEFENDANT CITY knew that the Chicago Police Department's policies, in obtaining search warrants to search citizens' homes for small quantities of drugs based on fabricated or unverified information received from unreliable informants resulted in "wrong searches" and "negative searches" with disturbing frequency.

57. The repetitive pattern of police misconduct arising out of "John Doe" search warrants in particular, has caused untold suffering to numerous Chicago citizens, the vast majority of whom are people of color and who live in economically disadvantaged neighborhoods in Chicago. According to the Defendant CITY's own Office of the Inspector General (OIG), 87.3 % of subjects of residential warrants served during the period from January 1, 2017, through December 31, 2020 were Black or Hispanic. (Officer of Inspector General-The Second Interim Report – CPD Search Warrants, Dated May 6, 2021, p. 7);

58. The repetitive pattern of police misconduct stemming from improper practices involving the procurement and execution of search warrants to conduct widespread illegal searches of citizens' homes, are often based upon false and unverified information that has caused immense and unjustified suffering, which has led to numerous federal lawsuits seeking redress for violations of the constitutional rights. Fully 10 % of all residential search warrants between 2017 and 2020 were "negative warrants" – the execution of the warrant did not result in the seizure of contraband, and 59% of residential search warrants did not result in a single arrest. (OIG May 6, 2021 Interim Rpt., p. 10.)

59. As a direct consequence of the illegal policies and practices as described above, the DEFENDANT CITY has had to defend numerous lawsuits and been required to pay many millions of dollars in verdicts and settlements to innocent victims of police misconduct arising out of practices by certain police units and officers engaged in the procurement and execution of illegal

search warrants. The litigation alleging similar practices involving the illegal procurement and execution of search warrants has served the DEFENDANT CITY with actual notice of ongoing *defacto* policies and practices that violate the constitutional rights of victims of illegal searches.

60. Despite the enormous costs to the DEFENDANT CITY and its citizens stemming from the Illegal policies and practices set forth herein, the illegal practices condoned by the CITY continue unabated, in the complete absence of any adverse consequence to the Chicago Police officers involved in the wrongdoing. Indeed, misconduct by certain officers and units engaged in frequent illegal searches is permitted by the CITY to continue - irrespective of how many times the officers involved are named as defendants in meritorious lawsuits or are accused in citizen's complaints alleging similar acts of misconduct.

A. **Failure to Investigate or Discipline Officer Misconduct**

61. The CITY has certain *de facto* policies, practices and/or customs of concealing, ignoring, and otherwise tolerating egregious misconduct by Chicago Police Officers, including the abuse of police powers by officers who repeatedly violate the constitutional rights of citizens during the procurement and execution of search warrants.

62. Specifically, Chicago Police Officers routinely and summarily break down the doors of private residences without announcing they are the police, and thereby denying the occupants a reasonable opportunity to admit the police, in violation of the judicial authority authorizing the search. It is the *de facto* policy, practice and/or custom of the Chicago Police Department to treat *every* search warrant as if it were a "no knock" warrant. Thus, it is a well-established practice by Chicago Police who do *not* have a "no knock" warrant to illegally and violently enter homes and to gratuitously destroy personal property without first providing residents an opportunity to open the door before the police resort to violently destroying property. This policy, practice and custom exceeds the judicial

authority of the search warrant and places citizens' as well as officers' safety at risk.

63. At all relevant times, the Chicago Police Department maintained a policy or custom of failing to investigate, discipline, supervise and control its officers, or to independently corroborate alleged information obtained by informants in obtaining search warrants into private residences. By maintaining these policies or customs and practices, the DEFENDANT CITY encouraged its officers to believe that they could engage in misconduct and illegal searches with impunity because they knew their actions would never be thoroughly scrutinized, or result in any discipline, sanction, or consequence of any kind.

64. Plaintiffs' experience was not an isolated incident. DEFENDANTS SGT. HABIAK, JR. and OFFICER MARTINEZ, in particular, have been the subject of numerous citizen complaints and federal lawsuits regarding illegal search and seizures of citizens based on false or fabricated information obtained in search warrants, or even without a warrant. Specifically, federal lawsuits alleging illegal searches of citizens in their homes by DEFENDANTS SGT. HABIAK, JR. and OFFICER MARTINEZ include:

(a) *Chatman v. Habiak,* case number 18-cv-02880;
Defendants searched plaintiff's home and vehicle without a warrant or consent, damaged / destroyed the contents of the home – case settled;

(b) *Love v. Martinez,* case number 13-cv-3174;
Defendants entered plaintiff's home without knocking, with a warrant for a *different* address and continued searching the home *after* they knew they were at the wrong address; – case settled;

(c) *Pinex v. Martinez,* case number 11-cv-3896;
Defendants entered plaintiff's home at gun point without knocking, damaged / destroyed the contents of the home – case settled;

(d) *Walker v. Martinez,* case number 12-cv-1422; and
Police entered an apartment without knocking, at gun point, and destroyed or damaged property. Prior to the day of the raid the apartment had been vacant for one (1) year, "negative warrant"; case settled;

(e) *Mikolon v. Martinez*, case number 14-cv-1852.

65. This documented pattern of misconduct placed the DEFENDANT CITY on notice that their failed policies, practices and customs regarding fabricated or falsified search warrants and unlawful searches resulted in a clear pattern of illegal misconduct by DEFENDANTS SGT. HABIAK, JR.'S and OFFICER MARTINEZ. Despite the CITY's knowledge of the City's failed policies, practices and customs, the policymakers failed to take any action to remedy these problems, specifically refusing to sanction, discipline, retrain, or properly supervise DEFENDANTS SGT. HABIAK, JR. or OFFICER MARTINEZ.

66. In addition to the specific DEFENDANT OFFICERS, the DEFENDANT CITY OF CHICAGO is often sued for violations of civil rights arising out of the procurement and execution of residential search warrants. As such, the CITY was aware of and has intentionally ignored the egregious misconduct by Chicago Police Officers, including the abuse of police powers by officers who repeatedly violate the constitutional rights of citizens during the procurement and execution of search warrants, as in the following cases:

(a) *Martinez v. City of Chicago, et al.,* case number 06cv00696 - residential search warrant on April 15, 2005 alleging false information in order to obtain search warrant, no knock search warrant and refusal to allow plaintiff to put on clothes; (case settled);

(b) *McCadd v. City of Chicago et al.,* case number 09cv01958 – residential search warrant on February 18, 2009 alleging an illegal search, no knock warrant, police destroyed a room; strip search and guns drawn; (trial: verdict for Plaintiffs);

(c) *Echevarria, et al. v. City of Chicago, et al.*, case number 11cv07171 - residential search warrant on October 19, 2010 alleging an illegal search and excessive force; (case settled);

(d) *Bonner v. City of Chicago, et al.,* case number 12cv00981 – residential search warrant on February 12, 2010 alleging an illegal entry and search; illegal execution of search warrant and seizure of property; (Trial: verdict for Plaintiff.);

(e) *Walker, et al. v. City of Chicago, et al.*, case number 12cv01422 – residential search warrant alleging an illegal search/seizure and strip searched a plaintiff; destroying items in the apartment (case settled);

(f) *Island v. City of Chicago, et al.*, case number 19cv01831 – residential search warrant executed alleging no knock warrant; illegal strip search and destructional of personal property ( case settled);

(g) *Polk, et al. v. City of Chicago, et al.*, case number 19cv3756 – residential search warrants executed in 2017 and 2018 alleging the police provided false information; pointed weapons at plaintiffs including a minor; destroyed personal property, including shooting plaintiff's dog in the presence of minor child; (case settled);

(h) *Pearce v. City of Chicago, et al.,* case number: 08cv4483 – residential search warrant obtained with fabricated information officer attributed to J. Doe informant; officers illegally detained and searched residence of a Chicago police detective's blind grandmother; (trial – verdict for Plaintiffs)

(i) *Anjanette Young v. City of Chicago*, et al., case number 2021L001939 – residential search warrant on February 21, 2019 based on false J. Doe informant information; plaintiff repeatedly begged the police to put clothing on but was ignored; (case settled for $2.9 million);

(j) *Smith v. City of Chicago, et al.*, case number 14cv4359 – residential search warrant on December 29, 2012 alleging no search warrant; police forced their way into home; one plaintiff in underwear; one plaintiff had no clothes on from waist down; police forcibly took plaintiff into custody; used excessive force; (case settled);

(k) *Williams, et al. v. City of Chicago, et al.,* case number 19cv2993 – residential search warrant on May 2, 2018 alleging unlawful search and seizure; handcuffed plaintiffs, police verbally abusive, guns pointed at plaintiffs; destroyed doors inside home; did not provide plaintiffs with search warrant  (case settled);

(l) *Redmond v. City of Chicago, et al.*, case number 19cv3942 – residential search warrant on March 14, 2018 alleging police terrorized plaintiffs and three minor children at gun point; illegal broke down front door of home; detained at gunpoint; illegal search ed home without valid search warrant or consent (case settled);

(m) *Simmons v. City of Chicago, et al.*, case number 14cv9042 -residential search warrant on August 29, 2013 alleging illegal procurment and execution of warrant; pointing weapons at minor children;  (case settled for $2.5 million);

(n) *USA v. Elizondo, et al,* 18CR-00286 -CPD Sgt. and officer convicted of fabricating J. Doe complaints for search warrants.

67. Based on the media attention and volume of federal lawsuits, settlements and

verdicts paid by the Defendant CITY over the years involving both the unconstitutional procurement and execution of search warrants as well as the CITY'S own investigation and probe by the CITY'S Office of the Inspector General, the Defendant CITY has been on notice for years that officers have engaged in such illegal policies and practices.

**B.     Chicago Police Failed to Maintain a Proper Early Warning System**

68.     The City of Chicago has failed to maintain a proper or valid early warning system to detect and intervene with corrective measures officers with multiple CRs and/or who exhibit patterns of potentially adverse performance, attitude and behavior.

69.     The DEFENDANT CITY failed to maintain and/or utilize a valid early warning system which would have identified DEFENDANT SGT. GUY D. HABIAK, JR, STAR #14939 and DEFENDANT OFFICER SERGIO MARTINEZ, STAR #19512 as officers with repeated offenses of a similar nature alleged against them. The absence of a valid early warning system is a complete failure by the DEFENDNAT CITY to impose proper discipline, re-training, supervising or any other meaningful intervention in an effort to curb repeated patterns of misconduct by DEFENDANTS SGT. HABIAK, JR, or OFFICER SERGIO MARTINEZ or other DEFENDANT OFFICERS.

70.     In the case of *First Midwest Bank v. City of Chicago, et al.*, 14-cv-9665 (N.D. Ill) a federal jury found the City of Chicago failed to maintain an adequate Early Warning System to identify and correct problematic behavior of officers.

71.     The DEFENDANT CITY has failed to identify officers with the highest numbers of Complaint Registers "CRs" filed against them, despite knowing that such identification and proper retraining or discipline could prevent such officers from committing further acts that are likely to continue to cause injury and suffering to individuals, such as PLAINTIFFS.

72. The actions of DEFENDANT OFFICERS were done pursuant to one or more of the following *de facto* policies, practices and/or customs of the CITY that are so pervasive that they carry the force of law:

   a) fabricating or concealing material information in order to obtain warrants;

   b) failing to make reasonable efforts to corroborate or properly investigate information of alleged criminal conduct provided by informants, *including* informants who often have significant incentive to fabricate such allegations and who have previously provided incorrect information;

   c) exceeding judicial authority by executing every warrant as if it were a "no knock" warrant without providing residents a realistic opportunity to open the door and thereby needlessly terrorizing destroying private property;

   d) failing to place official priority on avoiding unnecessary uses of force against young children or their adult relatives in the children's presence. CPD's official use-of-force policy lacked any requirement or guidance for officers to avoid using unnecessary or excessive force against young children or their adult relatives in the children's presence when possible. CPD's search warrant policy and related policies failed to require officers seeking or executing residential search warrants to make reasonable efforts before obtaining and/or executing a warrant to determine, through investigation and surveillance, (a) whether children or pets reside in the residence; (b) to avoid entry and search at times when children are likely to be present; or (c) to de-escalate themselves or change tactics when they encounter young children or dogs in a residence.

   e) failing to maintain and/or utilize a valid early warning system which would have identified DEFENDANTS SGT. HABIAK, JR. and OFFICER MARTINEZ as officers with repeated offenses alleged against them and led to the proper discipline, re-training, supervising or other intervention into their behavior.

73. As a result of the deficient policies and procedures outlined above, Chicago police officers routinely execute search warrants at the homes of innocent civilians, needlessly destroying private property, pointing weapons in the presence of young children and thereby causing traumatic stress and anxiety to the occupants, such as the PLAINTIFFS.

74. The aforementioned *de facto* practices, policies, and customs of DEFENDANTS, individually and collectively, have been maintained and/or implemented with utter indifference by DEFENDANTS, and have encouraged and/or motivated DEFENDANT OFFICERS to commit the wrongful act against PLAINTIFFS outlined above and, therefore, acted as the direct and proximate causes and moving force behind the injuries.

## REQUEST FOR RELIEF

75. PLAINTIFFS, GEORGE GARCIA, KYMBERLY BLEVINS, for herself and on behalf of her minor children, G. GARCIA and K. GARCIA and MICHAEL ZASTRO respectfully request that the Court:

    a.    Enter a judgment in their favor and against all Defendants;

    b.    Award compensatory damages against all Defendants;

    c.    Award attorney's fees against all Defendants;

    d.    Award punitive damages against all individual Defendants; and,

    e.    Grant any other relief this Court deems just and appropriate.

## JURY DEMAND

PLAINTIFFS, GEORGE GARCIA, KYMBERLY BLEVINS, for herself and on behalf of her minor children, G. GARCIA and K. GARCIA and MICHAEL ZASTRO, demand a trial by jury under the Federal Rule of Civil Procedure 38(b) on all issues so triable.

    Respectfully submitted,

    /s/ Jeffrey J. Neslund
    JEFFREY J. NESLUND
    One of the Attorneys for Plaintiffs

Jeffrey J. Neslund
Law Offices of Jeffrey J. Neslund
20 North Wacker Drive, Suite 3710
Chicago, Illinois 60606
(312) 223-1100

Michael D. Robbins
Michael D. Robbins & Associates
20 North Wacker Drive, Suite 3710
Chicago, Illinois 60606
(312) 899-8000