UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE GARCIA; KYMBERLY BLEVINS, on behalf of herself and her minor children K. GARCIA and G. GARCIA; and MICHAEL ZASTRO, | |
| Plaintiffs, | No. 21 C 2850 |
| v. | Judge Thomas M. Durkin |
| SERGIO MARTINEZ; GUY D. HABIAK, JR; JONATHAN E DIBIASE; ANTHONY M. PALUMBO; ANGELO C. DICERA; ANDREW S. KATS; CHEN Q ZHENG; SEAN P. LYNCH; CESAR SOTO; and THE CITY OF CHICAGO, | |
| Defendants. | |

**ORDER**

In their initial complaint, Plaintiffs brought four primary claims: (1) illegal procurement of a warrant by defendant Officer Sergio Martinez, as supervised by defendant Sergeant Guy Habiak; (2) illegal searches by all the individual defendants; (3) illegal seizures by all the individual defendants; and (4) *Monell* claims alleging the City's liability for the first three claims. The individual defendants moved to dismiss the claims for illegal procurement of a warrant and the City moved to dismiss all the *Monell* claims. The individual defendants did not move to dismiss the claims for illegal searches and seizures.

The Court granted the motion to dismiss the illegal procurement claim, finding that Plaintiffs had not plausibly alleged that Martinez failed to make reasonable

efforts to corroborate the statements of the informant. *See* R. 26 (*Garcia v. Martinez*, 2022 WL 2159834 (N.D. Ill. June 15, 2022)). The Court also granted the City's motion to dismiss the *Monell* claims because Plaintiffs failed to allege a "series of bad acts" that would permit the plausible inference that the City condoned the individual defendant officers' illegal searches and seizures. *Id.*

Plaintiffs filed an amended complaint removing the allegation that Martinez had failed to corroborate the informant's statements. R. 33. Instead, Plaintiffs allege that Martinez fabricated the informant's statements.

Additionally, Plaintiffs realleged their *Monell* claims. This time, they support those claims with reference to a report of the City's Inspector General about prior bad police searches and numerous prior lawsuits alleging conduct by the Chicago police officers similar to what Plaintiffs allege against Defendants in this case. The individual defendants answered the amended complaint, *see* R. 34, and did not move to dismiss any claims, including the new claim of fabricating evidence to procure the warrant.

The City again moves to dismiss all the *Monell* claims. *See* R. 35. The City's primary issue is that the amended complaint includes a *Monell* claim for a policy or practice of "failing to make reasonable efforts to corroborate or properly investigate information of alleged criminal conduct provided by informants." *See* R. 33 ¶ 72. The City points out that the Court dismissed this claim against the individual defendants, and Plaintiffs did not replead it against any of the individual defendants in the amended complaint, instead alleging that Martinez illegally procured the warrant by

2

fabricating evidence. The City argues that there can be no claim against it for a practice of failing to corroborate informant statements if none of the individual defendants are alleged to have committed that act in this case. More generally, the City also argues that Plaintiffs' amended allegations still fail to allege a series of bad acts sufficient to plausibly allege the City's liability for any of the claims.

The Court agrees with the City's argument that this case is no longer about a failure by the individual defendants to make reasonable efforts corroborate the informant's statement. Plaintiffs no longer make that allegation against the individual defendants, so Plaintiffs cannot seek liability against the City for that kind of conduct either. In any claim, whether for individual or municipal liability, a plaintiff can only seek relief for what happened to them. (A class action is an exception to this rule, but this case is not a class action.) Plaintiffs' complaint seeks relief for their claim that Martinez fabricated the evidence used to procure the warrant (along with the resulting searches and seizures themselves), but it no longer seeks relief based on a claim that Defendants failed to corroborate the informant's statement. For that reason, Plaintiffs cannot seek relief for a failure to corroborate claim, whether against the individual officers or the City.

The City also argues that Plaintiffs have failed to plausibly allege the City is liable for the alleged illegal searches and seizures. In their amended complaint, Plaintiffs reference 19 cases from the past 15 years, which either settled or resulted in plaintiffs' verdicts (and one defendant's conviction), for illegal conduct occurring during execution of residential search warrants, like the case here. Plaintiffs also

3

reference a report from the City's Office of the Inspector General, which they allege found that "[f]ully 10% of all residential search warrants between 2017 and 2020 were 'negative warrants'—the execution of the warrant did not result in the seizure of contraband, and 59% of residential search warrants did not result in a single arrest." R. 33 ¶¶ 57-58. The City argues that the cases Plaintiffs reference "are not sufficiently similar" to Plaintiffs' claims. *See* R. 35 at 8. The City contends that the not all of the referenced past lawsuits included allegations of pointing guns at minors and no-knock entry, which are two of Plaintiffs' primary allegations in this case. But many of them did include such allegations. And in any event, these are details about what made the searches and seizures illegal. Contrary to the City's argument, all of the past lawsuits concerned illegal searches and seizures in residences when the warrant was allegedly illegally procured. That is what Plaintiffs alleged happened to them. And the Inspector General's report confirms that searches and seizures like the Plaintiffs allege are a significant problem in Chicago. Therefore, these allegations are sufficient to plausibly infer that the City condones such conduct and could be liable to Plaintiffs in this case for the illegal searches and seizures they allege.

The City argues that settlements are not evidence of liability and so cannot be evidence of a widespread practice. But the City cites scant authority for its position that settlements are an improper basis to infer *Monell* liability. And, to the contrary, the Seventh Circuit has suggested that settlements are properly considered support for a *Monell* claim. *See Valentino v. Vill. of S. Chi. Heights,* 575 F.3d 664, 675 (7th Cir. 2009) (finding that the plaintiff failed to establish a widespread practice because

4

the plaintiff did "not contend that any of these alleged instances of [the complained-of behavior] ever resulted in a meritorious lawsuit *or settlement*") (emphasis added).

The City also argues that some of the referenced lawsuits are too old. Many, however, are only a few years old, and the rest are by no means ancient. *See Hill v. City of Chicago*, 2020 WL 509031, at *4 (N.D. Ill. Jan. 31, 2020) (denying motion to dismiss *Monell* claim based on "at least 70 cases . . . since 1986 in which Chicago Police Department officers have fabricated evidence or suppressed exculpatory evidence that led to convictions"). Furthermore, to the extent the Court might be reticent to accept older settlements as evidence of a widespread practice, the large number referenced (19) assuages that concern. Additionally, the Inspector General's report confirms that searches and seizures like those Plaintiffs allege in this case are a problem for the Chicago Police Department.

The City also argues that Plaintiffs have failed to allege causation. But the Supreme Court's holding in *Monell* is itself a theory of municipal *causation*. If a Plaintiff alleges an express policy, a decision by a policymaker, or—as here—a "series of bad acts," such that the plaintiff has stated a *Monell* claim, then causation is baked into the allegations. The entire point of alleging a "series of bad acts" is to demonstrate that the municipality can be said to have *caused* the injury at issue.

The City cites four cases in support of its argument that Plaintiffs have not plausibly alleged that a widespread practice caused, or was the "moving force" behind, Plaintiffs' injuries; all are inapposite. In *Adams v. Tortorello*, the district court dismissed a *Monell* claim alleging that the City's failure to equip police officers with

5

gun-sight flashlights or night vision goggles caused the plaintiff to be shot by a police officer at night. *See* 2013 WL 4476626, at *3 (N.D. Ill. Aug. 20, 2013). In *Chaparro v. Powell*, the plaintiff alleged that a "code of silence" led to his arrest. *See* 2008 WL 68683, at *3 (N.D. Ill. Jan. 2, 2008). In *Johnson v. Cook County*, the court held that the allegation of a policy of suppressing complaints was insufficiently related to a claim that a doctor sexually assaulted an inmate during a physical exam. *See* 526 F. App'x 692, 696 (7th Cir. 2013). And in *Austin v. City of Chicago*, the plaintiff did not allege a "series of bad acts," and relied on his own personal injuries to allege a *Monell* claim. *See* 2019 WL 4750279, at *3 (N.D. Ill. Sept. 30, 2019). None of the alleged practices in these four cases was proximate to the alleged injuries. A lack of nighttime equipment does not necessarily mean that a police office will shoot someone. A "code of silence" is too broad of a "practice" to be tied to any particular illegal conduct. The same is true of a practice of "suppressing complaints" with respect to an allegation that a doctor sexually assaulted an inmate. And a failure to allege a "series of bad acts" beyond their own experience is not an issue with Plaintiffs' amended complaint, which, as discussed, includes a list of 19 prior lawsuits.[1] None of these cases undermines Plaintiffs' allegation that the City condones illegal procurement of warrants,[2] and bad search and seizure tactics, and that these practices cause police

---

[1] Plaintiffs' allegations of these 19 lawsuits also undermines the City's argument that Plaintiffs' "allegations [are] limited to the [actions of the] defendant officers." *See* R. 35 at 6. Clearly, they are not so limited.

[2] Plaintiffs' claim on this score has shifted from alleging that the City condones a practice of failing to corroborate informant statements to alleging the City condones a practice of fabricating informant statements.

6

officers to continue to employ these tactics. Plaintiffs' allegations of past lawsuits and the Inspector General's report plausibly alleges that Chicago police officers engage in this kind of conduct somewhat regularly. A plausible inference from this repeated conduct is that the City condones it. Similar allegations have "withstood motions to dismiss in many other cases in this District." *Spearman v. Elizondo*, 230 F. Supp. 3d 888, 895 (N.D. Ill. 2016) (citing cases).

Lastly, the City fails in its "last ditch effort" to argue that Plaintiffs have failed to allege deliberate indifference in light of the "City's numerous reform efforts, and other admirable efforts." *See* R. 35 at 10. Perhaps the City has made such efforts; but, to the extent the City is correct about their relevance, those are facts for discovery. The possibility of such an affirmative defense is not a reason to dismiss the claims at the pleading stage.[3]

## Conclusion

Therefore, the City's motion to dismiss [35] is denied in part and granted in part in accordance with this order.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: February 23, 2023

---

[3] The City did not argue for dismissal of the *Monell* claim that the City condones a practice of procuring warrants based on fabricated informant statements.